**J. BENNETT FRIEDMAN, ESQ., SBN 147056**
   *jfriedman@flg-law.com*
**MICHAEL SOBKOWIAK, ESQ., SBN 242718**
   *msobkowiak@flg-law.com*

**FRIEDMAN LAW GROUP, P.C.**
1900 Avenue of the Stars, 11th Fl.
Los Angeles, California 90067
Telephone: (310) 552-8210
Facsimile: (310) 733-5442

Attorneys for Plaintiff Jeffrey A. Rinde

# UNITED STATES BANKRUPTCY COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re: | ) LEAD CASE NO.: 2:17-bk-12392-BR |
| | ) |
| **MARK ELIAS CRONE,** | ) ADV. CASE NO.: 2:17-ap-01311-BR |
| | ) |
| | ) Chapter 7 |
| Debtor. | ) |
| | ) **FIRST AMENDED COMPLAINT FOR** |
| | ) **DETERMINATION OF** |
| | ) **DISCHARGEABILITY OF DEBT** |
| **JEFFREY A. RINDE,** | ) **PURSUANT TO SECTION 523 OF THE** |
| | ) **BANKRUPTCY CODE** |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| **MARK ELIAS CRONE,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff-Creditor Jeffrey A. Rinde ("Rinde," or "Plaintiff") submits and files this

Amended Complaint against Defendant-Debtor Mark Elias Crone ("Crone," or "Defendant"), and

1
FIRST AMENDED COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF DEBT

respectfully alleges as follows:

## JURISDICTION, VENUE AND NATURE OF MATTER

1. Plaintiff seeks a determination and declaration finding that the debt owed to him by the Debtor is non-dischargeable under §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6) of the Bankruptcy Code.[1]

2. Venue is proper in this judicial district under 28 U.S.C. § 1409 as this adversary proceeding ("Adversary") is a proceeding arising in, arising under, and/or related to the bankruptcy case styled *In re Mark Elias Crone*, Case No. 2:17-bk-12392-BR (the "Case"), a case under chapter 7 of the Bankruptcy Code, and which is pending in the United States Bankruptcy Court for the Central District of California (the "Court," or the "Bankruptcy Court").

3. The Bankruptcy Court has jurisdiction over this Adversary pursuant to 28 U.S.C. §§ 151, 157 and 1334.

4. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (I) and this Court can and should enter final judgment on all claims for relief asserted herein.

5. Regardless of whether this proceeding is core, non-core, or otherwise, Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

## THE PARTIES

6. Plaintiff is, and at all relevant times herein was, a resident of the State of New York. Plaintiff is the principal owner and Managing Partner of the global law firm known as CKR Law, and a record and/or beneficial owner of not less than fifty (50%) percent of CKR Global Advisors, Inc., a Nevada corporation ("Global Advisors"). Prior to Defendant's withdrawal on or about April 26, 2016, Plaintiff was also the beneficial owner of fifty (50%) percent of Vertex Advisors Limited ("Vertex"); from and after Defendant's withdrawal from Vertex, Plaintiff was and still is the sole owner of Vertex. At all times relevant hereto, Plaintiff was and still is the President and a director of both Global Advisors and Vertex.

---

[1] 11 U.S.C. § 101 *et seq.*

2
FIRST AMENDED COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF DEBT

7. Defendant Mark Elias Crone, the debtor in the Case, is an individual, and on information and belief, Plaintiff alleges that Crone is a resident of Los Angeles, California. Defendant purports to be a capable and qualified securities lawyer and became affiliated with Plaintiff and CKR Law in order to, and based on his representations to Plaintiff and CKR Law in 2014 that he was then able and qualified to, provide quality legal services on behalf of CKR Law's clients, especially its clients requiring the need for counsel with expertise in securities.

## GENERAL ALLEGATIONS

8. Beginning in February 2014, and continuing through no later than April 26, 2016, Defendant was a member and equity owner of CKR Law. At all relevant times herein, the equity ownership of CKR Law was split evenly among Plaintiff, Scott Kline and Defendant. Scott Kline severed his partnership and affiliation with CKR Law and its affiliated entities in December 2014.

9. As a member of CKR Law, Defendant owed fiduciary duties to Plaintiff and to CKR Law.

<u>Defendant Fraudulently Induces Plaintiff to Extend a Series of Loans</u>:

10. Prior to forming CKR Law with Plaintiff, and unbeknownst to Rinde or Scott Kline, Defendant was embroiled in various personal and professional disputes, including substantial delinquent personal and professional financial obligations that potentially would significantly limit and impair his ability to provide legal services to CKR Law and its securities clients, which disputes and impairments Defendant knowingly and intentionally failed to disclose to Plaintiff prior to joining CKR Law.

11. The undisclosed facts that would materially bear on the formation of CKR Law included an open investigation by the United States Securities Exchange Commission ("SEC"); that Defendant was the subject of an unsatisfied judgment which ultimately led to a wage garnishment; that Defendant had defaulted on a bank business loan; that Defendant owed significant amounts for unpaid State and Federal back taxes; that Defendant's prior law firm was dissolved amid complaints by his partners, among other things, that Defendant caused the firm to

3
FIRST AMENDED COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF DEBT

become overextended by borrowing funds without the intent of repaying the firm, and engaging in a pattern of charging personal living expenses and travel to the firm; and the false representation that Defendant's financial condition would permit him to forgo receiving a monthly draw until CKR Law was generating sufficient cash flow. Upon information and belief, Defendant knew if Rinde or Kline were aware of his delinquent personal and professional financial obligations, and the SEC investigation, they would not have agreed to form CKR Law, which was initially primarily a corporate securities boutique law firm, with Defendant.

12. After and as a result of Plaintiff becoming aware of Defendant's personal and professional impairments and inabilities resulting from, inter alia, ongoing legal proceedings including the open SEC investigation against Defendant concerning violations of securities law prior to joining CKR Law, Plaintiff was forced to take prompt and material corrective measures to mitigate the reputational and financial damages Plaintiff would sustain along with his interest in CKR Law resulting therefrom.  To resolve these previously concealed matters – and to enable Defendant to provide the required services, support and assistance to CKR Law – during Defendant's tenure with the law firm, Rinde, in his individual capacity, and CKR Law, made a series of loans and advances to Defendant and for Defendant's benefit to, among other things, defray defense costs and other expenses in the face of these mounting legal proceedings and actions and to ultimately reposition Defendant from a CKR attorney to Vertex management.

13. Additionally, at the request of Defendant, CKR Law permitted Defendant to take a guaranteed monthly draw of $10,000 – although Defendant had demanded a monthly draw of $20,000 – when other partner(s) of CKR Law received no or a reduced draw in order to fund operating expenses of the law firm.

14. In order to induce Plaintiff to loan such amounts, and provide a monthly guaranteed draw, Defendant represented that the loans and monthly draw would enable him to resolve his then existing personal and professional disputes, and place him in a position in which he could focus on, among other things, building CKR Law's client base and assisting Plaintiff in

managing CKR's operations, which promises and assurances induced Plaintiff to extend the loans. Defendant's representations were collateral to his independent obligation to repay the loans extended by Plaintiff.

15. Plaintiff reasonably relied on Defendant's representations, and loaned Defendant in excess of the sum of $175,000, and agreed to permit Defendant to receive a draw of $10,000 a month.

16. Defendant made these representations with the preconceived and undisclosed intention of not performing and/or knowing such representations were materially false and inaccurate. Notwithstanding receipt of the funds from Plaintiff, and the benefit of a $10,000 monthly draw, Defendant completely avoided and/or ignored his fiduciary and other obligations to further the interests of CKR Law, instead taking elaborate personal vacations and charging exorbitant personal expenses to the law firm's charge card for himself, family members and other third parties with whom he was engaged in intimate relationships, while at the same time providing minimal marketing and administrative support. Defendant's personal conduct resulted in him billing virtually no hours – notwithstanding the fact that Defendant knew the loans from Plaintiff were to be repaid through distributions or other remuneration to which Defendant would become entitled resulting from his work performed on behalf of CKR Law. Defendant, instead, lavishly spent company assets to support his sumptuous, overextended and philandering lifestyle despite being repeatedly admonished by Plaintiff and CKR Law. Rather than performing as promised, Defendant devoted his time to conjuring ways to injure Plaintiff.

17. Defendant has repaid no portion of the loans made to him by Plaintiff.

Defendant Misappropriates Assets of CKR Law:

18. Defendant devoted almost no time to advancing the interests of Plaintiff. In 2014, Defendant billed only 145.2 hours, equaling approximately 12 hours per month; in 2015, Defendant billed 183.55 hours, or, 15 hours per month; and for the period of January through April 2016, Defendant billed only 44.4 hours, averaging 11 hours per month. The minimal work

that Defendant did perform on behalf of CKR Law was primarily directed toward client development in the area of transactional securities work.

19. CKR Law often bills clients on a flat fee basis for this type of transactional work. In such instance, all or a substantial portion of the payment is typically due at the close of a transaction, and funded from transaction proceeds.

20. In April 2016, Defendant withdrew from CKR Law and associated with a different law firm. At the time of Defendant's departure from CKR Law, there was substantial amounts of unbilled "work in process" and accounts receivable concerning numerous CKR Law clients that were parties to flat fee billing arrangements with the law firm.

21. In furtherance of Defendant's intention to injure Plaintiff and CKR Law – in large part because Plaintiff had "cutoff" Defendant's access to a corporate credit card that Defendant was recklessly utilizing to effectively and improperly increase his monthly draw, from the then mutually agreed amount of $10,000 per month, to as much as $20,000 per month, Defendant began using a private email address – mecrone@gmail.com – to surreptitiously communicate with clients of CKR Law, and potential clients of CKR Law, to induce such persons to, among other things, make payment on CKR Law's accounts receivable, and for flat fee and other work in progress, to Defendant at his new employer and/or to intentionally delay the creation of new attorney-client relationships until Defendant had disassociated from CKR Law.

22. Plaintiff has identified at least 15 clients and prospective clients of CKR Law that were the subject of Defendant's scheme to defraud Plaintiff and CKR Law. At Defendant's request, Plaintiff will identify the names of such clients upon the entry of a protective order in a form agreeable to Plaintiff.

23. In or around April 2016, at the time Defendant disassociated from CKR Law, Defendant convinced several flat fee and other clients of CKR Law to transfer their files to Defendant's new employer. The approximate aggregate amount then payable to CKR Law for work in progress (including work in progress which could not be entered due to his failure to open

6
FIRST AMENDED COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF DEBT

up the new client matters) relating to flat fee and other clients that requested a transfer of their files to Defendant's new law firm is in excess of $100,000.

24. Subsequent to his departure from CKR Law, Defendant, wrongfully collected all or some portion of certain flat fee and other amounts due from particular clients of CKR Law, but failed to remit payment for the proportional share of work completed by CKR Law, with the intent of depriving CKR Law of its earned fees, and, by extension, Plaintiff of his interest in the fees as a member of CKR Law.

25. Plaintiff has also identified approximately $1,350,000 in accounts receivable that were due and payable to CKR Law prior to Defendant's departure from CKR Law in April 2016, on which collection efforts have been ignored by Defendant and the clients.  Plaintiff is informed and believes that Defendant wrongfully applied account credits in an effort to persuade clients to join Defendant at his new law firm, and/or provided instructions for payment to be made to the new law firm.

26. Because Defendant utilized a non-CKR Law email address to perpetrate his fraud, discovery may reveal additional amounts owing to CKR Law, and by extension, Plaintiff, as the sole member of CKR Law.

27. In addition to the foregoing, prior to departing the law firm in April 2016, Defendant used CKR Law resources to generate business – ostensibly for CKR Law – though purposely delayed having prospective clients enter into agreements for services until Defendant had associated with a new law firm.  The purpose of this scheme was to defraud CKR Law by causing it to expend resources in developing business, with the intention of permanently depriving CKR Law and Plaintiff from any resulting value.  Because Defendant utilized a personal email address to perpetrate much of his scheme, the extent of Defendant's fraud cannot be determined without discovery.

28. Prior to joining CKR Law, Defendant established a personal bank account in China allegedly to collect funds from his clients located in China.  This account was utilized for a short

7
FIRST AMENDED COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF DEBT

period by CKR Law to collect funds from Chinese clients until the time that CKR Law established its own bank account for this purpose soon after the law firm was formed. During this period, Plaintiff was provided with access to the account, and copies of account statements, to verify the transfer of funds to CKR Law. Plaintiff is informed and believes that Defendant continued to maintain this personal account after an account was established in CKR Law's name.

29. After Defendant's departure from CKR Law, in or about May 2016, Plaintiff undertook a review of Defendant's emails and discovered a client – Company 1 – that did not appear in CKR Law's billing system.[2]

30. Upon being confronted with this information in or about May 2016, Defendant admitted that by misrepresenting Chinese law he had utilized his aforementioned personal bank account maintained in China to hold funds allegedly in escrow with the implied authority of CKR Law for Company 1, and redirected the related escrow fee of approximately $10,000 due to the firm to Defendant's personal account for his own use. This scheme was accomplished by Defendant instructing and utilizing a CKR Law employee under his direct supervision and control, and with whom Defendant was previously engaged in an intimate personal relationship, to cease forwarding bank statements for the account to Plaintiff – as had been standard practice – that would have alerted Plaintiff and CKR Law to Defendant's theft and to terminate Plaintiff's access to the account utilized by Defendant.

31. Upon information and belief, Defendant engaged in further improper actions to the financial detriment of Plaintiff and CKR Law by utilizing this personal bank account maintained in China, but his instructions to the former CKR Law employee render further detailed allegations impossible at this juncture in the absence of discovery.

32. From mid-2014, through April 2016, Defendant resided at a furnished corporate apartment maintained by CKR Law, and also had the use and benefit of computers and mobile phones issued by CKR Law.

---

[2] At Defendant's request, Plaintiff will provide the names of the entities identified herein as "Company [X]" upon entry of a protective order in a form agreeable to Plaintiff.

8
FIRST AMENDED COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF DEBT

33.     During the time period preceding Defendant vacating the apartment in April 2016, Plaintiff is informed and believes that, based on representations by Defendant's then and current girlfriend, at the time Defendant entered into one or more of the agreements and made the subject promises set forth above, he had no intention of advancing the interests of CKR Law as promised. In fact, following receipt of a substantial portion of the loans, draws and the benefit of improper credit card charges, and after Plaintiff incurred significant expenses in repositioning Defendant from CKR Law to Vertex management, Defendant regularly engaged in recreational drug use at the apartment, which further diminished his ability to fulfill his fiduciary and other obligations to Plaintiff, CKR and/or Vertex.

34.     At the time Defendant made the false promise to advance the interests of Plaintiff, CKR Law, and Vertex, Defendant was planning to continue enjoying the benefits of the apartment, and carry on with his drug use and illicit affair, while formalizing his plans to steal corporate property and other assets and relocate to California.

35.     In or around April 2016, Defendant vacated the corporate apartment, and retained personal property in which Plaintiff held a beneficial interest as the owner of CKR Law.  These items include mobile telephones and computers with a collective value of approximately $5,000, furniture and a Sonos brand wireless speaker system with a collective value of approximately $12,000, an espresso maker with a replacement value of approximately $3,000, and a Vitamix blender with a replacement cost of approximately $700.

<u>Defendant Misappropriates Assets of Vertex</u>:

36.     At all relevant times herein, Plaintiff was and remains the President and a director of Vertex.  At all times herein, Plaintiff has been the one-hundred percent (100%) record holder of Vertex.  Plaintiff beneficially owned fifty-percent (50%) of the equity of Vertex until and after Defendant's withdrawal from Vertex in April, 2016, at which time Plaintiff became, and remains, Vertex's sole owner.

37.     As mentioned above, prior to joining CKR Law, Defendant failed to disclose that

he was the subject of an open investigation by the SEC into possible violations of federal securities laws.

38. In approximately April or May of 2015, Defendant contacted CKR Law from a unidentified Washington, D.C. telephone number. When confronted by Plaintiff, Defendant admitted for the first time that he was the subject of the SEC investigation.

39. Upon Plaintiff learning of the SEC's investigation of Defendant, plans were promptly developed to delineate Defendant's activities from those of CKR Law to protect the interests of the law firm and its clients, and the significant investments of money and labor that Plaintiff had made in CKR Law.

40. In or around August or September of 2015, Defendant transitioned his day-to-day activities from CKR Law to Vertex, through which Defendant marketed non-legal related services that would be provided by Vertex directly, and indirectly would generate legal work for the law firm.

41. In this new position, Defendant was tasked with opening a bank account for Vertex. It was intended that invoices would issue in the ordinary course of Vertex's business, and resulting payments from clients of Vertex would be deposited into Vertex's bank account.

42. However, Defendant did not open a bank account on behalf of Vertex, and instead opened an account under a different name with the intent of defrauding Plaintiff and Vertex.

43. During the period of October 2015 through June 2016, Vertex provided consulting and advisory services to clients of CKR Law, and to other entities as well.

44. On or about October 12, 2015 a consulting agreement was entered into between Vertex and Company 2.

45. In or around April 2016, Defendant contacted Company 2 with instructions to terminate payments made to Vertex, and to reissue payment in the name of the fraudulent bank account opened by Defendant. Company 2 issued payment in accordance with Defendant's fraudulent instructions, and the amounts were deposited into the sham account established by

Defendant.

46. The aggregate sum of the payments wrongfully diverted from Vertex by Defendant is believed to be approximately $25,000. However, because Defendant controlled the daily management of Vertex and concealed his scheme from Plaintiff and CKR law, the extent of Defendant's fraud and resulting losses cannot be determined without discovery.

<u>Defendant Steals Stock Certificate 1091</u>:

47. On occasion, CKR Law received a grant of equity in exchange for providing legal or other services.

48. Primarily because of certain historic, ongoing, and prospective legal and regulatory issues of which Defendant was the subject (these issues were and are unrelated to Plaintiff's conduct), including an open SEC investigation pre-dating Defendant's association with CKR Law, the owners and members of CKR Law, including Plaintiff, agreed that Global Advisors, an affiliated entity owned by CKR Law's partners, would be used as a vehicle through which certain investment and advisory consulting services would be rendered and performed on behalf of clients and prospective clients of CKR Law.

49. At all relevant times herein, Plaintiff was and remains the President and a director of Global Advisors, and owns no less than fifty-percent (50%) of the equity of Global Advisors.

50. In 2015, one of CKR Law's clients caused certificate no. 1091 ("Certificate 1091") representing 100,000 shares of common stock of Akoustis Technologies, Inc. to be issued in partial payment for the services rendered by CKR Law. Consistent with the relevant written agreements, at the request of CKR Law, Certificate 1091 was issued to Global Advisors as CKR Law's "designee", and was thereafter maintained in CKR Law's safe.

51. When this Adversary was initiated, the value of the stock shares represented by Certificate 1091 was approximately $1,000,000. The value of the same stock shares is now approximately $599,000, equating to a reduction in value of $401,000 during the six-month pendency of this Adversary.

11
FIRST AMENDED COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF DEBT

52. In a scheme to wrongfully convert the ownership rights of Certificate 1091, and deprive Plaintiff, CKR Law and Global Advisors of their respective rights in and to the stock shares, during the period of August through September, 2015, and again in April 2016, Defendant willfully and maliciously caused a series of false and fraudulent statements and submissions to be filed surreptitiously with the Secretary of State of the State of Nevada. These filings, falsely certified as true and accurate by Defendant under penalty of perjury, purported to (i) change the name of Global Advisors to "Ascendant Global Advisors, Inc." ("Ascendant"); and (ii) remove Plaintiff as a director and officer of Global Advisors, and establish Defendant as its sole officer and director.

53. In furtherance of Defendant's willful and malicious scheme and false submissions to the Nevada Secretary of State, while Plaintiff was traveling outside of the United States on CKR Law related business, in March 2016, Defendant unlawfully and deceptively purloined, and took wrongful possession of, Certificate 1091, with the intent of causing Certificate 1091 to be reissued in the name of Ascendant, enabling Defendant to sell the stock shares and steal the proceeds.

54. Once Defendant's larcenous efforts were discovered, in June 2016, Plaintiff, Global Advisors, CKR Law and others filed suit against Defendant in the Supreme Court of the State of New York in and for the County of New York and sought and obtained an injunction preventing Defendant's sale, transfer or encumbrance of said shares of stock. Upon request, the designated transfer agent issued a "stop transfer order," blocking any transfer of Certificate 1091.

**FIRST CLAIM FOR RELIEF**

(Nondischargeable Debt Under 11 U.S.C. § 523(a)(2)(A))

55. Plaintiff repeats, realleges and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 54 above, as though fully set forth herein.

56. Defendant obtained the use and benefit of $175,000 in funds from Plaintiff, a monthly draw from CKR Law of $10,000, and the benefit of personal expenses of approximately

$10,000 per month charged to a CKR Law credit card, by failing to disclose his serious financial and legal problems prior to joining CKR Law, knowing that the disclosure of such financial and legal problems would materially affect Plaintiff's decision to form a business relationship with Defendant, and by making false and misleading representations to Plaintiff, and promises to Plaintiff, with a malevolent preconceived and undisclosed intention of not performing. The representations and promises that Defendant would advance the interests of CKR Law and Plaintiff were intended to, and did induce, Plaintiff to extend the loans and advances, and were collateral to Defendant's obligations to repay the funds loaned and advanced by Plaintiff.

57. Defendant's promises, that the loans and advances would enable Defendant to resolve his then existing personal and professional disputes, and place him in a position in which he could focus on building CKR Law's client base, were material to Plaintiff's decision to enter into the transactions.

58. Defendant intended that Plaintiff rely on his promises and representations that Defendant would devote the necessary time and efforts to faithfully develop CKR Law's business, and Plaintiff did reasonably rely thereon.

59. Defendant did not intend to perform on his representations and promise to Plaintiff, and did not perform.

60. Defendant has repaid no portion of the amounts loaned by Plaintiff, or draws and advances made, in reasonable reliance on Defendant's promises.

61. All or part of the debt owed by Defendant to Plaintiff is non-dischargeable as it is a debt for money obtained by false pretenses, false representations, or actual fraud within the meaning of Bankruptcy Code § 523(a)(2)(A).

62. Additionally, Defendant's theft of Certificate 1091 from CKR Law's safe, and fraudulent transfer of Certificate 1091 to his wife, constitutes "actual fraud" within the meaning of Bankruptcy Code § 523(a)(2)(A).

///

13
FIRST AMENDED COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF DEBT

## SECOND CLAIM FOR RELIEF

(Nondischargeable Debt Under 11 U.S.C. § 523(a)(4))

63.     Plaintiff repeats, reiterates and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 62 above, as though fully set forth herein.

64.     The above facts demonstrate that Defendant converted and embezzled assets in which Plaintiff has and had an interest while acting in a fiduciary capacity, including CKR Law's work in process, accounts receivable, escrow funds and personal property, funds from Vertex, and improper credit card charges billed to CKR Law.  Said actions by Defendant constitute larceny.

65.     The above facts show that Defendant also intentionally, fraudulently and wrongfully removed Certificate 1091 from CKR Law's safe while acting in a fiduciary capacity with the intent to appropriate Certificate 1091 and the shares of stock represented thereby for himself.  Said actions by Defendant constitute larceny.

66.     Plaintiff, who owns an interest in CKR Law, Global Advisors and Vertex, holds an equitable and beneficial interest in the misappropriated funds and personal property, and in Certificate 1091 and the shares of stock represented thereby.

67.     As a result of Defendant's scheme and conduct, Plaintiff has suffered damages, in an amount which cannot yet to be determined with precision, arising from the Defendant's taking of money and personal assets from entities owned by Plaintiff.  Additionally, Plaintiff has been forced to file suit against Defendant and others, and will be forced to incur expenses litigating false claims brought by the Chapter 7 Trustee in the Case.
All or part of the debt arising from Defendant's thefts of money and assets (including Certificate 1091), including the costs of litigation arising from the foregoing, all in an amount not yet determined, is non-dischargeable as it is a debt for embezzlement or larceny within the meaning of Bankruptcy Code § 523(a)(4).

*///*

### THIRD CLAIM FOR RELIEF

(Nondischargeable Debt Under 11 U.S.C. § 523(a)(6))

68.  Plaintiff repeats, realleges and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 67 above, as though fully set forth herein.

69.  Plaintiff is an owner of CKR Law, Global Advisors and Vertex.

70.  By virtue of Plaintiff's ownership interests in such entities, Plaintiff has an equitable and beneficial interest in Certificate 1091 purloined by Defendant (and the shares of Akoustis stock represented thereby) on the grounds that the sale of such shares of stock was to fund payment of the legal and other services performed by CKR Law on behalf of a client in return for issuance of Certificate 1091 and to repay CKR Law for some of its loans and advances made to and for Defendant and the costs of pursuing recovery of Defendant's defalcations. Plaintiff also has an equitable and beneficial interest in Certificate 1091 based on his ownership of Global Advisors, the true owner of Certificate 1091 and the shares of stock represented thereby. Further, Plaintiff has an equitable and beneficial interest in the CKR Law funds and property, and the Vertex funds, stolen, embezzled and misappropriated by Defendant given Plaintiff's ownership stake in such entities.

71.  Defendant's thefts of various items belonging to CKR Law and Vertex, and Certificate 1091 belonging to Global Advisors, and obtaining loans, advances and the wrongful benefit of a company credit card by false pretenses, were intended to deprive, and have actually deprived, Plaintiff of the benefit of such items that were to flow from his interest in CKR Law, Global Advisors and Vertex, and have resulted in willful and malicious injury to Plaintiff.  The injury to Plaintiff was willful because of the Defendant's subjective intent to cause harm to Plaintiff as evidenced by, among other things, Defendant's statements to his girlfriend of his intentions, and in furtherance thereof, embezzlement of money and personal property from CKR Law and Vertex, and the theft of Certificate 1091, and encouraging CKR Law's clients to file baseless claims against the law firm or, alternatively, the subjective knowledge of Defendant that

harm to Plaintiff was substantially certain to occur, as demonstrated by knowledge of certainty of injury by taking affirmative steps to convert Certificate 1091, including unauthorized, false and fraudulent filings by Defendant with the Nevada Secretary of State to change the name of Global Advisors to Ascendant, and making himself the sole officer and director of thereof, without corporate or shareholder approval for either purported action.

72.  The wrongful acts necessarily and intentionally caused injury to Plaintiff, including the inability to fully realize and enjoy the fruits of his investments in CKR Law, Global Advisors and Vertex, and the expenses arising from the litigation resulting from Defendant's theft of Certificate 1091, including false claims by the Chapter 7 Trustee challenging the validity of the debts owed to CKR Law that are to be satisfied though the sale of the shares of Akoustis stock.

73.  All or part of the debts owed to Plaintiff arising from the foregoing allegations are non-dischargeable as debts for willful and malicious injury by the Defendant to Plaintiff or his property, within the meaning of Bankruptcy Code § 523(a)(6).

**PRAYER**

WHEREFORE, Plaintiff-Creditor respectfully requests that this Court enter a judgment determining that the debts described herein of the Defendant to Plaintiff are non-dischargeable under Bankruptcy Code §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6), and granting Plaintiff such other and further relief as this Court may deem just and proper.

Respectfully submitted,

DATED:  December 27, 2017            FRIEDMAN LAW GROUP, P.C.

By: /s/ Michael Sobkowiak
MICHAEL SOBKOWIAK, ESQ.
Attorneys for Plaintiff Jeffrey A. Rinde

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
1900 Avenue of the Stars, 11th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **FIRST AMENDED COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF DEBT PURSUANT TO SECTION 523 OF THE BANKRUPTCY CODE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 12/27/2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Howard M Ehrenberg (TR)**    ehrenbergtrustee@sulmeyerlaw.com, ca25@ecfcbis.com;C123@ecfcbis.com;hehrenberg@ecf.inforuptcy.com
- **Jerome Bennett Friedman**    jfriedman@flg-law.com, msobkowiak@flg-law.com;jmartinez@flg-law.com
- **Eric A Puritsky**    eric@puritskylaw.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 12/27/2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/27/2017 | Elisabeth Walters | /s/Elisabeth Walters |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

**VIA FIRST CLASS MAIL**

V. James DeSimone Law
c/o V. James DeSimone, Esq.
13160 Mindanao Way, Ste 280
Marina del Rey, CA 90292

Mark Elias Crone
c/o Theresa Mains, Esq.
Theresa Mains Law
2251 N. Rampart Blvd., Ste 102
Las Vegas, NV 89128

David M. Goodrich, Esq.
Steven F. Werth, Esq.
Sulmeyer Kupetz
333 South Hope Street, 35th Floor
Los Angeles, CA 90071

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                          **F 9013-3.1.PROOF.SERVICE**